1  BLECHER COLLINS PEPPERMAN & JOYE, P.C.
   Maxwell M. Blecher (State Bar No. 26202)
2    *mblecher@blechercollins.com*
   Donald R. Pepperman (State Bar No. 109809)
3    *dpepperman@blechercollins.com*
   Theo "John" Giovanni Arbucci (State Bar No. 249811)
4    *jarbucci@blechercollins.com*
   515 South Figueroa Street, Suite 1750
5  Los Angeles, California 90071-3334
   Telephone: (213) 622-4222
6  Facsimile: (213) 622-1656

7  Attorneys for Plaintiff
   Joseph Lai dba UltraTek

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    WESTERN DIVISION

12

13                                              LA CV14 05301-RGK-PJWx

   JOSEPH LAI dba ULTRATEK,          Case No.
14
             Plaintiff,              **CIVIL COMPLAINT FOR**
15                                   **DAMAGES AND INJUNCTIVE**
        vs.                          **RELIEF FOR:**
16
   USB-IMPLEMENTERS FORUM,           **(1)  RESTRAINT OF TRADE**
17 INC.; HON HAI PRECISION               **(SHERMAN ACT § 1); and**
   INDUSTRY CO., LTD.; FOXCONN
18 INTERNATIONAL HOLDINGS LTD.;      **(2)  INTENTIONAL**
   FOXCONN INTERNATIONAL, INC.;          **INTERFERENCE WITH**
19 FOXCONN ELECTRONICS, INC.;            **PROSPECTIVE ECONOMIC**
   FOXCONN (KUNSHAN)                     **ADVANTAGE AND**
20 COMPUTER CONNECTOR CO.,               **CONTRACTUAL**
   LTD.; and DOES 1 through 20,          **RELATIONSHIPS**
21
             Defendants.             **(DEMAND FOR JURY TRIAL)**
22

23

24

25

26

27

28

1  Plaintiff, by its attorneys, brings this civil action against the above-named
2  defendants and, to secure damages and injunctive relief and demanding trial by jury,
3  complains and alleges as follows:

**I.**

**THE PARTIES**

6  1.    Plaintiff Joseph Lai, doing business under the trade name UltraTek
7  (hereinafter "plaintiff" or "UltraTek"), is the owner of United States Patent No.
8  7,717,717 issued May 18, 2010 covering a highly user-friendly "reversible"
9  universal serial bus male connector which UltraTek markets under the name
10 "Flipper USB."  UltraTek is engaged in, *inter alia*, the business of designing and
11 manufacturing electronic components such as Universal Serial Bus ("USB")
12 connectors which are used primarily to connect computer peripherals, such as
13 printers, keyboards and external hard drives to personal computers, smart phones
14 and other electronic devices.  UltraTek maintains offices at 1251 West Sepulveda
15 Blvd., #347, Torrance, California 90502.  Neither UltraTek nor Mr. Lai are
16 members of defendant USB Implementers Forum, Inc. ("USB-IF").  Plaintiff has
17 antitrust standing because it is a direct actual and potential competitor of defendant
18 Foxconn and because the refusal of defendant USB Implementers Forum, Inc. to test
19 and/or certify plaintiff's "Flipper" was for anticompetitive purposes.

20 2.    Defendant USB Implementers Forum, Inc. is a non-profit corporation
21 founded in 1995 by Intel along with a group of companies that develop USB
22 specifications.  The USB-IF was formed to provide a support organization and
23 forum for the advancement and adoption of USB technology.  The USB-IF
24 facilitates the development of high-quality compatible USB peripherals (devices),
25 and promotes the benefits of USB and the quality of products that have passed
26 compliance testing.

27 3.    Defendant Hon Hai Precision Industry Co., Ltd. is a Taiwanese
28 corporation with a place of business at 2, Tzu Yu Street, Tu-cheng District, New

Blecher Collins
Pepperman & Joye

BC
PJ

1   Taipei City, 23678 Taiwan, R.O.C. ("Hon Hai").  Hon Hai is a giant multinational
2   electronics manufacturer that is one of the world's largest makers of electronic
3   components, including connectors and cable assemblies for use in PCs, such as USB
4   connectors.  On information and belief, as of April 2012, Hon Hai had a market
5   capitalization of approximately $37.8 billion, annual sales of approximately $128
6   billion (2012), and employed over one million people in its many factories in China
7   and around the world.  Hon Hai is traded on the TSEC under the code 2317 and on
8   the London Stock Exchange (LSE) under the symbol HHPD.

9          4.      Defendant Foxconn International Holdings Ltd. is a Cayman Islands
10  corporation with a registered office at Scotia Centre, 4th Floor, P.O. Box 2804,
11  George Town, Grand Cayman, Cayman Islands, with places of business located at
12  8/F., Peninsula Tower, 538 Castle Peak Road, Cheung Sha Wan, Kowloon, Hong
13  Kong and 1705 Junctions Court, Suite 200, San Jose, California 95112 ("Foxconn
14  International CI").  Foxconn International CI is an original design manufacturer
15  ("ODM") providing vertically integrated manufacturing services for consumer
16  electronics.  Foxconn International CI specializes in manufacturing services that
17  include designing and manufacturing precision tools and molds, product
18  development, and manufacturing of components, such as USB Type A connectors.
19  Foxconn International CI is one of the largest exporters from China, and most of its
20  products enter the United States through ports in California.  Foxconn International
21  CI is traded on the Hong Kong stock exchange (SEHK) under the code 2038.

22         5.      Defendant Foxconn International, Inc. is a California corporation with a
23  place of business at 1650 Memorex Drive, Santa Clara, California 95050 ("Foxconn
24  International USA").  On information and belief, Foxconn International USA
25  receives products from other Foxconn companies for distribution within the United
26  States.

27         6.      Defendant Foxconn Electronics, Inc. is a California corporation with
28  places of business located at 105 South Puente Street, Brea, California 92821 and

Blecher Collins
Pepperman & Joye

1  1688 Richard Avenue, Santa Clara, California 95050 ("Foxconn Electronics").  On

2  information and belief, Foxconn Electronics provides design and development,

3  manufacturing, assembly, and after-sales services to computer, communication, and

4  consumer-electronics companies in the United States and internationally.  On

5  information and belief, Foxconn Electronics manufactures circuit boards

6  motherboards, graphic cards, chassis, coolers, and personal computers.

7       7.     Defendant Foxconn (Kunshan) Computer Connector Co., Ltd. is a

8  Chinese corporation with a principal place of business at 999 Beimen Road, Yushan

9  Township, Kunshan, Jiang Su Province, P.R.C. ("Foxconn Kunshan").  On

10 information and belief, Foxconn Kunshan is an original design manufacturer that

11 builds numerous consumer electronics products and components for shipment into

12 the United States, such as Apple's iPhone, iPod, and iPad, including USB Type A

13 computer connector products.  The Foxconn companies are collectively referred to

14 herein as "Foxconn," although the Foxconn entities are, on information and belief,

15 separate entities and not wholly owned subsidiaries of each other.  Foxconn is an

16 entrenched player and dominates the market for USB connectors in the United

17 States, possessing a market share greater than 50%.  Discovery in this action will

18 reveal their precise interrelationships.

19      8.     Plaintiff is ignorant of the true names and capacities of defendants sued

20 herein as DOES 1 through 20, and therefore sues defendants by such fictitious

21 names.  Plaintiff will amend this Complaint to allege their true names and capacities

22 when ascertained.  Plaintiff is informed and believes, and, based on such

23 information and belief, alleges each of the fictitiously named defendants is

24 responsible in some manner for the injuries to plaintiff as alleged herein.  Plaintiff

25 further alleges that its injuries were proximately caused by such defendants, and

26 each of them.

27

28

Blecher Collins
Pepperman & Joye

## II.

## NATURE OF THE ACTION

9.    This action arises under the antitrust laws of the United States (15 U.S.C. § 1).  The antitrust acts of Hon Hai, the parent of the Foxconn companies, were aided and abetted in a conspiracy with the knowing cooperation of Foxconn International CI, Foxconn Electronics, Foxconn International USA and Foxconn Kunshan – or alternatively, the defendants acted as a single entity in an attempt to monopolize at least one relevant antitrust market.  Relevant product markets include the market for USB connectors, or in the alternative, USB reversible connectors.

## III.

## JURISDICTION

10.    The Court has subject matter jurisdiction pursuant to Section 1 of the Sherman Act 15 (U.S.C. § 1), Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) (antitrust), 28 U.S.C. §§ 1331, 1337 (federal question) and supplemental jurisdiction over the related state law claims (28 U.S.C. § 1367).

11.    The Court has personal jurisdiction over the foreign Foxconn defendants because these defendants' acts have caused significant injury to plaintiff in this District.  Moreover, the defendants have minimum contacts with this forum as a result of business regularly conducted within the State of California and this District.  These business activities generate substantial revenue in interstate and international commerce from the sale of defendants' products, including sales within this District.  The defendants expect their actions to have consequences within this District.  Indeed, defendants' contacts within the State of California are so substantial, systematic, and continuous that defendants can be deemed to be "present" in the state for purposes of general personal jurisdiction.  Moreover, the allegations of this Complaint relate to USB products that are being sold, offered for sale, and distributed in California, which also makes "specific" personal jurisdiction appropriate in this case.

Blecher Collins
Pepperman & Joye

## IV.

## VENUE

12.   Venue is proper over defendants within this District under 28 U.S.C. §§ 1391(b), (c).  Venue is proper because plaintiff is located within this District and has suffered harm in this District.  Moreover, defendants derive substantial revenue from sales in this District.  Finally, as corporations, these defendants are deemed to "reside" in any jurisdiction in which personal jurisdiction can be exercised over them, including in this Court.

## V.

## INTERSTATE COMMERCE

13.   The actions complained of herein have, and will, restrain and adversely affect interstate commerce in that defendants sell products across state lines.

## VI.

## FACTUAL ALLEGATIONS COMMON TO

## ALL CLAIMS

14.   As the name suggests, a "connector" is typically a means of connecting one electronic device to another: for example, plugging the "male" portion of, say, a cable into the "female" portion of the connector, which could reside in a laptop or desktop computer or a cell phone.  Plaintiff competes directly with defendants in making and selling USB Type A connectors.

15.   The USB connector is the most successful peripheral interconnect ever designed.  The USB connector allows, for example, digital cameras, external hard drives, keyboards, computer mice, and many other peripherals to transmit data between the peripheral and a computer over a standardized data link.  In addition, printers use USB connections to interface directly to digital cameras, and PDAs use USB to connect to computers, keyboards, mice and power devices. There are over 6 billion USB products in the stream of commerce today.

16.   USB connectors have become a critical component of contemporary

Blecher Collins
Pepperman & Joye

computers and consumer electronic devices, including cell phones. These devices all possess several common features: they all require USB connectors to interact with other devices; those manufactured and sold without USB connectors are undesirable and of limited use; and they all play into markets in which consumers demand access to the best available technology – meaning that, at the present time, USB connectors are a practical necessity for all competitors in these markets.

17.    Furthermore, defendant USB-IF (the standard-setting organization ("SSO") governing USB standards) vetted and incorporated the patents and other intellectual property relevant to all USB standards, and secured appropriate global rights from all its contributors under the Contributors Agreement as a prerequisite to adoption of the standard and before offering those rights to its adopters, in an Adopter Agreement. It is not possible to meaningfully compete in the USB market, or sub-market for reversible connectors, without USB-IF certification of a particular product.

18.    Foxconn is the world's largest supplier of USB connectors and provides the USB connector components for roughly 50% of all computers and cell phones worldwide – including the United States.

## VII.

## STANDARDS IN THE COMPUTER INDUSTRY

19.    To facilitate interoperability among chipmakers, device makers, and computer makers, among others, companies participate in the development of technical standards that establish precise specifications for the interfaces, such as connectors, between devices. Once the standards are established, competing manufacturers can offer their own products that are compliant with the standards and are able to connect with other devices, thus enhancing their "compatibility" and thus their value.

20.    Technical standards play a critical role in the development of computer/peripheral interoperability. The economic and legal literature recognize

Blecher Collins
Pepperman & Joye

1  that standards, and industry-wide participation in SSOs, combine significant

2  procompetitive benefits with significant anticompetitive risks. The conduct of

3  companies that participate in the deliberations and adoption of a standard, and

4  whose intellectual property plays a role in the industry-wide implementation and use

5  of that standard, is critical in determining whether a particular standard is

6  procompetitive or anticompetitive as implemented.

7      21.    On the procompetitive side, standards have the potential to encourage

8  innovation and promote competition. Product designers and manufacturers are more

9  willing to invest in computer products because, so long as they are compliant with

10  the interface standard, the products will operate effectively with numerous third

11  party products. Standards development can also reduce costs for both suppliers and

12  purchasers. For suppliers, standardization can reduce the need to customize

13  products to varying specifications. When a uniform (or standardized) product

14  satisfies multiple purchasers, manufacturing volume and distribution can increase

15  while per unit costs decrease. Purchasers benefit from increased price competition

16  among suppliers, each of whom incorporates the standard rather than launching

17  incompatible product lines. Because many suppliers make standards-compliant

18  products, switching suppliers typically does not require a substantial redesign of a

19  purchaser's products or a substantial technical transfer to enable the new supplier to

20  produce compatible products. The lower "switching cost" intensifies competition

21  among suppliers, leading to lower prices.

22      22.    On the anticompetitive side, because standards result from coordination

23  and compromise among competitors, they often seek to exclude competition from

24  those not involved in defining and implementing the standard. The anticompetitive

25  nature of such behavior is manifest: an unscrupulous contributor to a standard can

26  use the standard-setting process to increase reliance on and commitment to secure

27  the success of its product, to exclude competition, production entirely, or to extract

28  unreasonable, unfair, and anticompetitive royalties from companies adopting the

Blecher Collins
Pepperman & Joye

BC
P

1  standard in good faith because it has monopolized the product or at least excluded

2  substantial competition.

3      23.    As a result, SSOs typically license all technology on Fair, Reasonable,

4  And Non-Discriminatory terms, or more commonly "RAND" terms, as a necessary

5  condition for adoption of the standard.  Contributors gain certain competitive

6  benefits by gaining industry-wide acceptance of their preferred technologies.  Their

7  competitors or new entrants gain the ability to use those preferred technologies

8  without fear of litigation by or against one another.  Whether RAND have been

9  adopted by a SSO on a particular standard is central to determining whether a

10  particular standard or SSO is, on balance, procompetitive or anticompetitive.

11      24.    Without such practices, an SSO would risk being deemed an illegal

12  trust for providing a forum in which competitors can determine which products will

13  and will not be made.  Attempts to manipulate or subvert the standard setting

14  process for anticompetitive purposes can lead to antitrust violations.  *Allied Tube &*

15  *Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988); *American Society of*

16  *Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982); *TruePosition,*

17  *Inc. v. L.M. Ericsson Telephone Co.*, No. 11-4574, 2012 WL 3584626 (E.D. Pa.

18  Aug. 21, 2012).  RAND licenses are thus central to the viability of an SSO and the

19  standards it promulgates.  They provide the necessary procompetitive benefits by

20  preventing patent owners from imposing monopolistic royalties, and by mitigating

21  the threat that a contributor will hold up the entire industry.

22      25.    Defendant USB-IF is the managing SSO for USB specifications.  The

23  USB-IF oversees and coordinates the standards for all USB connectors.

24  **VIII.**

25  **TRADE AND COMMERCE**

26      26.    Plaintiff Lai/UltraTek is engaged in the business of developing,

27  manufacturing and marketing USB connectors, including its patented USB

28  connector "Flipper" which is a "reversible" Type A connector.  Unlike a standard

Blecher Collins
Pepperman & Joye

one-way connector, a reversible connector can be plugged in up or down providing more ease and flexibility for interconnecting. Plaintiff Lai is the patentee on United States Patent 7,717,717 B1 issued on May 18, 2010.

27.     Practically any computer or cell phone bought today comes with one or more USB connectors. These USB connectors permit attachment of accessories to the computer quickly and easily.

28.     USB-IF requires parties contributing to a developed standard to sign a Contributors Agreement and those companies that adopt a USB standard or specification are also obligated to execute an Adoption Agreement. The Contributor Agreement obligates parties who contribute proprietary technology to the standard or specification to license that technology on RAND terms. The RAND license is part of a trade-off representing the consideration contributing parties give to USB-IF in exchange for the competitive benefits they will receive from gaining industry wide acceptance of their technology.

29.     USB-IF "certification" of a connector or connecting device is absolutely essential to the commercial viability of the connector or connecting device. No manufacturer of a computer or computer device would buy or adopt a connector that has not been certified by defendant USB-IF. Nor is it possible to interest significant investors without USB-IF certification for a connector product.

30.     Intel Corporation formed the USB-IF in 1995 as a non-profit corporation with other industry players to support and accelerate the adoption of USB-compliant peripherals. On information and belief, the USB-IF has over 700 member companies worldwide, and its Board of Directors includes representatives from Intel, HP, LSI Corporation, Microsoft Corporation, Renesas Electronics Corporation and ST-Ericsson.

31.     Foxconn was instrumental in organizing the technical standard for USB's reversible class connector. Indeed, the Chairman of the CabConn Working Group ("CCWG") was James Koser of Foxconn Electronics along with Tsuneki

1 | Watanabe and Jim Zhao, both of Foxconn, who were also members of that
2 | Committee.

### IX.

### VIOLATIONS ALLEGED

### FIRST CLAIM FOR RELIEF

### SHERMAN ACT § 1 (15 U.S.C. § 1)

### (Against All Defendants)

32.    Plaintiff hereby realleges and incorporates by reference each allegation set forth in paragraphs 1 through 31 of this Complaint as if set forth herein.

33.    Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits, *inter alia*, agreements or arrangements that unreasonably restrain competition to the detriment of consumers.

34.    Beginning at a time unknown to plaintiff and continuing up to the date of this Complaint, defendants have engaged in a contract, combination or conspiracy to restrain the above-described interstate trade in commerce in violation of Section 1 of the Sherman Act.

35.    The aforesaid contract, combination or conspiracy consists of an agreement, understanding and concert of action, the purpose of which is to restrain trade and commerce in the development, marketing, certification and sale of USB connectors, and in particular USB reversible connectors.

36.    The relevant product market for antitrust purposes in this case is defined as reversible USB connectors.  The relevant geographic market for antitrust purposes is the United States.

37.    Plaintiff UltraTek has the requisite standing to assert antitrust claims against defendants because it is a participant and competitor in the relevant market.

38.    Defendant USB-IF refused to allow plaintiff's patented reversible connector to be submitted or tested for certification, asserting in or around March 2013, that "these types of connectors are not certifiable."  This was a decision made

Blecher Collins
Pepperman & Joye

1  by USB-IF and expressly solicited by the Foxconn defendants for the purpose of

2  stifling competition from plaintiff's "Flipper" product and keeping the marketplaces

3  completely open for the exploitation and sale of Foxconn products. Foxconn has

4  shown prototypes of and has been advertising a reversible connector even before the

5  USB-IF specifications received final approval.

6      39.    Notwithstanding its declaration in March 2013, defendant USB-IF did,

7  in fact, announce its intention to publish a specification for a reversible USB

8  connector (Type C/3.1) in December 2013 to be finalized by the end of July, 2014.

9      40.    Defendants have kept plaintiff out of the multi-billion dollar business

10  of reversible USB connector market (2 billion cellular phones, 195 million tablets

11  sold in 2013, 500 million other USB devices also sold). Hundreds of millions of

12  people are affected and will continue to be frustrated.

13      41.    Moreover, 285 million visually impaired persons have been adversely

14  impacted by defendant's anticompetitive rejection of plaintiff's "Flipper."

15      42.    Nor is this the first or only time USB-IF has acted in an anticompetitive

16  and exclusionary manner to protect the interests of its members. Similar acts were

17  previously directed at eSATAp, Lotes, and Firewire. Defendant Foxconn, with its

18  co-conspirators, has engaged in an anticompetitive scheme to prevent plaintiff and

19  other competitors from manufacturing and selling competing USB connectors for

20  the purpose of maintaining and increasing Foxconn's market share and

21  supracompetitive pricing on its products.

22      43.    Each act of the defendants was done in furtherance of a combination

23  and conspiracy to restrain trade in the market for the design, marketing and sale of

24  reversible USB connectors. The acts of defendants had the effect of unreasonably

25  restraining commerce in the above-described market.

26      44.    Defendants' anticompetitive scheme and plan of defendants to

27  unreasonably restrain trade and commerce in the above-described market has been

28  done with the intent to specifically eliminate plaintiff as a viable competitor and to

Blecher Collins
Pepperman & Joye

1 | reduce competition in general.  These agreements and combinations constitute

2 | unreasonable restraints of trade.  The overall anticompetitive scheme consists of at

3 | least the acts/conduct alleged in paragraphs 38-42, inclusive, herein, to be viewed as

4 | a whole.

5 |       45.    As a direct result of the foregoing anticompetitive conduct and

6 | restrictions on competition, output has been limited and the quality and choice for

7 | USB connector products has been reduced and diminished in that market.  There are

8 | no business, technological, or efficiency reasons or justifications that require

9 | defendants to impose these anticompetitive conditions and restrictions.

10 |       46.    Defendants' refusal has created a barrier that precludes effective entry

11 | by other competitors into the relevant market and the quality and variety of offerings

12 | in that market have been reduced and constrained.

13 |       47.    Defendants' conduct is unlawful under the antitrust laws when assessed

14 | under the "Rule of Reason."  The anticompetitive consequences of defendants'

15 | conduct outweigh any procompetitive effects thereof.  Due to Foxconn's significant

16 | market power in the relevant market and the dominant position it has obtained,

17 | competition in that market has been significantly impaired by defendant Foxconn's

18 | conduct.

19 |       48.    The aforesaid conduct of defendants' contracts, combination, or

20 | conspiracy has produced antitrust injury, and unless enjoined by this Court, will

21 | continue to produce at least the following anticompetitive, exclusionary and

22 | injurious effects upon competition and plaintiff in interstate commerce:

23 |         (a)  plaintiff was denied potential certification of its potential Flipper

24 | product;

25 |         (b)  plaintiff has been unable to enter into contacts to market or sell

26 | Flipper;

27

28

Blecher Collins
Pepperman & Joye

-12-

(c)  plaintiff has had to terminate ongoing contract negotiations with Plantronics and others for Flipper products expressly because Flipper was not certified by defendant;

(d)  competition in the development of USB connectors has been substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(e)  barriers to entry into the market have been raised;

(f)  consumer choice has been, and will continue to be, significantly limited and constrained as to selection, price, and quality of USB connectors;

(g)  consumer access to plaintiff's reversible USB connector products will continue to be excluded from the market;

(h)  the market for development and sale of reversible USB connector products will continue to be artificially restrained or monopolized; and

(i)  reduced innovation.

49.  Defendants' restrictions and arrangements affect a substantial volume of interstate commerce in the relevant market.

50.  Defendants' anticompetitive and exclusionary conduct has caused antitrust injury to plaintiff, competition and consumers.

51.  By reason of, and as a direct and proximate result of defendants' practices and conduct, plaintiff has suffered, and will continue to suffer, financial injury to its business and property.  As a result, plaintiff has been deprived of revenues and profits it would have otherwise made, suffered diminished market growth and sustained a loss of goodwill.  Plaintiff has not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when it does so, it will seek leave of the Court to insert the amount of the damages sustained herein.

Blecher Collins
Pepperman & Joye

## SECOND CLAIM FOR RELIEF

## TORTIOUS INTERFERENCE WITH

## PROSPECTIVE ADVANTAGE

### (Against All Defendants)

52.     Plaintiff hereby realleges and incorporates by reference each allegation set forth in paragraphs 1 through 51 of this Complaint as if set forth herein.

53.     This Second Claim for Relief of this Complaint is based upon the torts committed by defendants against the plaintiff, as a supplemental claim pendent to the antitrust First and Second Claims for Relief (28 U.S.C. § 1367). The claims asserted herein are ancillary to the federal antitrust claim set out above and arise from the same transactions, occurrences and nucleus of operative facts as those claims.

54.     Plaintiff had entered negotiations with prospective customers, including but not limited to Plantronics, for Flipper products. These negotiations would have led to profitable business relationships between plaintiff and the prospective customers.

55.     Plaintiff has existing and valuable business relationships, as well as reasonable expectations of further and future relationships, with buyers/distributors of reversible USB connector products.

56.     Defendants were aware of these prospective business and actual contractual relationships and engaged in intentional and wrongful conduct designed or calculated to disrupt and interfere with those relationships.

57.     Defendants' conduct in interfering with such prospective and actual business was intentional, malicious and without a competitive or legitimate justification. Defendants' conduct and overall scheme was undertaken solely to hinder, if not eliminate, competition. Defendants' anticompetitive conduct was not privileged or excused and was without any legitimate business justification. Defendants knowingly engaged in such wrongful conduct for the purpose of

-14-

1  excluding competition and to deprive consumers of the benefits of free and open
2  competition.

3     58.   Defendants' conduct was a substantial factor in causing financial injury
4  to plaintiff and has rendered it more difficult for plaintiff to remain and survive as a
5  viable competitor.

6     59.   Plaintiff's business and goodwill has been, and will continue to be,
7  substantially injured by defendants' conduct.  Additionally, prospective customers
8  of plaintiff will continue to be injured and harmed by defendants' acts and practices.
9  Although plaintiff has incurred substantial losses as a proximate result of the
10  foregoing acts, and will continue to incur substantial losses in the future as well as
11  its growth being negatively impacted, all such losses may be difficult to calculate
12  with precision.  Therefore, in addition to any recoverable damages proximately
13  caused by defendants' wrongful conduct, plaintiff also seeks a permanent injunction
14  preventing defendants from continued interference in the future.

15     60.   The intentional and disruptive conduct of defendants was willful,
16  malicious and oppressive.  Consequently, an award of exemplary or punitive
17  damages in an amount sufficient to punish and deter defendants is justified.

18     61.   By actions, including but not limited to the abusive and predatory acts
19  set forth above, defendants intended to and did in fact, induce or cause plaintiff's
20  customers to end their prospective economic and actual contractual relationships
21  with plaintiff.

## PRAYER FOR RELIEF

22
23  WHEREFORE, plaintiff prays that the Court adjudge and decree as follows:
24     1.   That each defendant has violated Section 1 of the Sherman Act;
25     2.   That each defendant be adjudged to have willfully and maliciously
26  interfered with plaintiff's prospective economic and actual contractual relationships
27  and that plaintiff be awarded punitive damages for such willful and malicious
28  interference;

-15-

3.     That judgment be entered against each defendant on the antitrust claim for treble the amount of actual damages sustained by plaintiff, plus reasonable attorneys' fees and costs of suit, as provided by § 4 of the Clayton Act (15 U.S.C. § 15);

4.     That each defendant be permanently enjoined from further violation of Section 1 of the Sherman Act, and from tortiously interfering with plaintiff's prospective economic advantage and actual contractual relationships; and

5.     That plaintiff have such other and further relief as the Court may deem just and proper.

Dated:  July 8, 2014

BLECHER COLLINS PEPPERMAN & JOYE, P.C.
MAXWELL M. BLECHER
DONALD R. PEPPERMAN
THEO "JOHN" GIOVANNI ARBUCCI


By: _____
                Maxwell M. Blecher
        Attorneys for Joseph Lai dba UltraTek

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil

3 Procedure, Rule 38(b) and Local Rule 38-1.

4

5 Dated: July 8, 2014             BLECHER COLLINS PEPPERMAN & JOYE, P.C.

6                         MAXWELL M. BLECHER

7                         DONALD R. PEPPERMAN

                        THEO "JOHN" GIOVANNI ARBUCCI

8

9

10         By:                                

                            Maxwell M. Blecher

11                     Attorneys for Joseph Lai dba UltraTek

12 59491.6

13

14

15

16



17

18

19

20

21

22

23

24

25

26

27

28

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| JOSEPH LAI dba ULTRATEK | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| USB-IMPLEMENTERS FORUM, INC.; HON HAI PRECISION | ) |
| INDUSTRY CO., LTD.; FOXCONN INTERNATIONAL HOLDINGS | ) |
| LTD.; FOXCONN INTERNATIONAL, INC.; FOXCONN ELECTRONICS, | ) |
| INC.; FOXCONN (KUNSHAN) COMPUTER CONNECTOR CO., LTD.; | ) |
| and DOES 1 through 20 _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.  LA CV14 05301—RGK—PJWx

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Maxwell M. Blecher
> BLECHER COLLINS PEPPERMAN & JOYE, P.C.
> 515 S. Figueroa St., Suite 1750
> Los Angeles, CA  90071

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  7/9/2014                                    *Rudy*

*Signature of Clerk or Deputy Clerk*

1164

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00


I declare under penalty of perjury that this information is true.


Date: _____                    _____

                                                                *Server's signature*


                                                             _____

                                                                *Printed name and title*


                                                             _____

                                                                *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| JOSEPH LAI dba ULTRATEK | USB-IMPLEMENTERS FORUM, INC.; HON HAI PRECISION INDUSTRY CO., LTD.; FOXCONN INTERNATIONAL HOLDINGS LTD.; FOXCONN INTERNATIONAL, INC.; FOXCONN ELECTRONICS, INC.; FOXCONN (KUNSHAN) COMPUTER CONNECTOR CO., LTD.; and DOES 1 through 20 |

| (b) County of Residence of First Listed Plaintiff  Los Angeles | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| Maxwell M. Blecher/BLECHER COLLINS PEPPERMAN & JOYE, P.C. 515 S. Figueroa St., Suite 1750 Los Angeles, CA 90071 Tel: (213) 622-4222 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding  ☐ 2. Removed from State Court  ☐ 3. Remanded from Appellate Court  ☐ 4. Reinstated or Reopened  ☐ 5. Transferred from Another District (Specify)  ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
(1) Restraint of Trade-Sherman Act § 1; and (2) Intentional Interference with Prospective Economic Advantage and Contractual Relationships

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☒ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | LA CV14 05301 |
|---|---|---|

CV-71 (06/14)                   CIVIL COVER SHEET                   Page 1 of 3

**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>[ ] Yes  [X] No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>[ ] Yes  [X] No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| [ ] Yes   [X] No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. ➡ | [ ] Yes   [X] No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E, below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E:  Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western Division |

| QUESTION F:  Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes  [X] No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____    DATE:   July 8, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |